UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Mario C. Penaloza,  No. 18-cv-1907 (ECT/LIB)

    Petitioner,

v.  **ORDER AND REPORT AND RECOMMENDATION**

Secretary of Homeland Security, et al.,

    Respondent.

---

This matter comes before the undersigned United States Magistrate Judge upon Petitioner Mario C. Penaloza's Petition for Writ of Habeas Corpus. [Docket No. 1]. The present case has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons discussed herein, the Court recommends that Petitioner Penaloza's Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED**.

**I.   BACKGROUND AND STATEMENT OF FACTS**

On July 9, 2018, Petitioner Mario C. Penaloza (hereinafter "Petitioner"), an individual in the custody of the Immigration and Customs Enforcement (hereinafter "ICE") currently housed at the Freeborn County Jail in Albert Lea, Minnesota (hereinafter "Freeborn Jail"), proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Petition [Docket No. 1]).[1]

---

[1] On August 8, 2018, this Court ordered Petitioner to submit an amended IFP application that bears his signature or to make arrangements with the Clerk's Office to sign his pending IFP application. (Order [Docket No. 4]). Petitioner submitted an Amended Application to Proceed in District Court without Prepaying Fees or Costs, [Docket No. 18], on October 17, 2018, which contained his signature. Accordingly, this Court, after review of his IFP Application, orders that Petitioner's Amended Application, [Docket No. 18], is hereby **GRANTED**.

Petitioner is currently in removal proceedings before the U.S. Department of Homeland Security (DHS). (Id.). Petitioner argues that his continued detention violates his substantive due process rights under the Fifth Amendment. (Id. at 7).

Petitioner is a native and citizen of Mexico. (Ligon Decl., Ex. 1 [Docket No. 6-1], at 2). He entered the United States illegally at an unknown location on or about March 5, 1985. (Id.). He later received Temporary Resident Status on November 30, 1988, and received Lawful Permanent Resident status on December 1, 1990. (Id.).

On October 26, 2000, Petitioner was convicted in Ramsey County, Minnesota for driving while impaired. (Id.). He was convicted in Ramsey County for driving while impaired four additional times on December 10, 2004, December 11, 2006; June 28, 2006; and December 11, 2009. (Id.).

On June 28, 2006, Petitioner was convicted in Ramsey County, Minnesota of assault in the fifth degree. (Id.). On October 11, 2010, Petitioner was convicted of driving after cancellation, and on September 24, 2012, he was convicted of driving without a driver's license. (Id.).

On June 20, 2017, Petitioner was convicted in the Superior Court of California for illegally transporting marijuana. (Id.). As a result of his arrest, Petitioner was thereafter sentenced to 24 months of confinement. (Id.).

On February 28, 2018, ICE commenced removal proceedings against Petitioner and served him with a Notice to Appear. (Ligon Decl., Ex. 3 [Docket No. 6-3], at 1). He was charged with being an alien convicted of a violation of law related to controlled substances. (Id.). On that same day, the U.S. Department of Homeland Security (DHS) issued a Notice of Custody Determination, ordering that Petitioner be detained by DHS. (Id.). Petitioner subsequently requested an immigration judge review DHS's custody determination. (Ligon Decl., Ex. 4 [Docket No. 6-4]).

On March 21, 2018, the immigration judge (hereinafter "IJ") denied Petitioner's request for a change in custody status and found that Petitioner's detention was mandatory under 8 U.S.C. § 1226(c). (Ligon Decl., Ex. 5 [Docket No. 6-5]).

On May 17, 2018, the IJ ordered Petitioner be removed to Mexico and simultaneously denied his applications for asylum and withholding, cancellation, and deferral of removal. (Ligon Decl., Ex. 6 [Docket No. 6-6]).

On May 21, 2018, Petitioner filed a notice of appeal with the Board of Immigration Appeals (BIA) from the IJ's order of removal. (Ligon Decl., Ex. 7 [Docket No. 6-7]). Briefing by both parties was due on August 6, 2018, and the appeal is still pending as of the date of Respondents' Response. (Ligon Decl., Ex. 8 [Docket No. 6-8]).

On October 3, 2018, Petitioner also filed what has been labelled as a "Motion to Reconsider and Terminate in Light of Pereira v. Sessions." [Docket No. 15].[2]

## II.   PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner argues that his detention violates his due process rights under the Fifth Amendment. (Petition [Docket No. 1]). Petitioner is currently being held pursuant to 8 U.S.C. § 1226(c).

### A. Standard of Review

The United States Supreme Court has explained that even individuals who attain the legal immigration status allowing them to be in the United States "do not have an absolute right to remain here." Jennings v. Rodriguez, 138 S. Ct. 830, 837 (2018). An individual initially admitted to the United States may be removed if it is later discovered that he was inadmissible at the time

---

[2] It appears, however, that Petitioner intended to file the Motion with the Board of Immigration Appeals and not this Court. The Motion does not seek any relief from this Court. Therefore, this Court recommends Petitioner's Motion to Reconsider and Terminate in Light of Pereira v. Sessions, [Docket No. 15], be **DENIED as moot**.

of entry into the United States. See, Id. Or, as in the case of Petitioner, an individual already admitted to the United States may be removed if he is convicted of certain criminal offenses after admission. Id. at 837–38; See, 8 U.S.C. § 1226. With respect to the detention of individuals falling into either of these two categories:

> [8 U.S.C. §] 1226(a) sets out the default rule:  The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." [8 U.S.C.] § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on bond . . . or conditional parole." [Id.]
>
> Section 1226(c), however, carves out a statutory category of aliens who may *not* be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. [8 U.S.C.] § 1226(c)(1). The Attorney General may release aliens in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes, and "the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceedings." [8 U.S.C.] § 1226(c)(2).

Jennings, 138 S. Ct. at 837–38 (2018) (emphasis in original).

"'It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.' At the same time, however, [the United States Supreme Court] has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." Demore v. Kim, 538 U.S. 510, 523 (2003) (citation omitted). Specifically, the "detention of deportable criminal aliens pending their removal proceedings . . . serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 527–28. Moreover, "detention under § 1226(c) has a 'definite termination point': the conclusion of removal proceedings." Jennings, 138 S. Ct. at 846 (quoting Demore, 538 U.S. at 529).

4

A case recently before the United States Supreme Court involved arguments similar to those presently before this Court. In Jennings v. Rodriguez, the plaintiffs argued that § 1226(c) does "not authorize 'prolonged' detention in the absence of an individualized bond hearing at which the Government proves by clear and convincing evidence that the . . . detention remains justified." 138 S. Ct. at 839. The plaintiffs in Jennings argued that such prolonged detention without an individualized bond hearing violated the Due Process Clause of the Fifth Amendment. Id. The United States District Court for the Central District of California agreed, and it entered a permanent injunction ordering the Government to provide individual bond hearings. Id. On appeal, the Ninth Circuit Court of Appeals affirmed, but did so based upon its statutory construction of § 1226(c) "to include an implicit 6-month time limit on the length of mandatory detention." Id. at 846–48. In so construing § 1226(c), the Ninth Circuit relied heavily on the reasoning in Zadvydas v. Davis, 536 U.S. 678 (2001), in which the United States Supreme Court construed the statute that governs detention after an order of removal has been issued:

> [The statute] mean[s] that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal," and it further held that six months is a presumptively reasonable period. After that, the Court concluded, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release the alien.

Jennings, 138 S. Ct. 843 (quoting Zadvydas, 533 U.S. at 699, 701). Citing Zadvydas, the Ninth Circuit in Jennings found a similar 6-month limitation on detention during removal proceedings under §§ 1226(b) and (c), and it held that, during removal proceedings, a detained individual "must be given a bond hearing every six months and that detention beyond the initial 6-month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." Jennings, 138 S. Ct. at 839.

5

The United States Supreme Court reversed, distinguishing the statutes governing detention after an order of removal has issued, as examined in Zadvydas, from those governing detention during removal proceedings. Id. at 843–44. The United States Supreme Court held that unlike the statutes at issue in Zadvydas, "§ 1226(c) does not on its face limit the length of the detention it authorizes" and instead, § 1226(c) "makes clear that the detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" Id. at 846 (emphasis in original). Therefore, the United States Supreme Court in Jennings held that "subject only to express exceptions, §§ 1225(b) and 1226(c) authorize detention until the end of applicable [removal] proceedings." Id. at 842. However, because the Ninth Circuit had not reached the petitioners' argument that prolonged detention under § 1226(c) without an individualized bond hearing is unconstitutional, the United States Supreme Court remanded the case to the Ninth Circuit for consideration of those constitutional arguments on their merits. Id. at 851.

In a recent, informative decision from this District analyzing detention under § 1226(c), the Honorable Patrick J. Schiltz noted that various courts have utilized a fact-specific inquiry considering several factors as guidance for identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." Muse v. Sessions, 2018 WL 4466052, at *3 (D. Minn. Sept. 18, 2018) (quoting Diop, 656 F.3d at 232). Among those factors are (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal. Id. (citing Reid, 819

6

F.3d at 500–01); See also, Alier D. v. Secretary of Dep. of Homeland Security, et al., No. 18-cv-01645 (NEB/HB), 2018 WL 5849477 (D. Minn. Nov. 8, 2018) (applying the same factors). In Muse, the Court found that four of these factors weighed in favor of the petitioner and thus granted the petitioner relief. 2018 WL 4466052, at *3.

## B. Analysis

In the present case, application of the above factors supports Petitioner's argument that his continued detention in the instant case would violate the Due Process Clause of the Fifth Amendment.

First, in examining the length of detention, the Eighth Circuit has yet to hold what constitutes a reasonable length of detention, however, while there is no bright-line rule, other Circuits have weighed in on the issue. Although not controlling, the Third Circuit recently characterized nine months as "straining any common-sense definition of a limited or brief civil detention." Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 477 (3d Cir. 2015). Similarly, the Sixth Circuit has articulated that "when actual removal is not reasonably foreseeable, criminal aliens may not be detained beyond a reasonable period required to conclude removability proceedings without a government showing of a 'strong special justification,' constituting more than a threat to the community, that overbalances the alien's liberty interest." Ly v. Hansen, 351 F.3d 263, 273 (6th Cir. 2003).

Petitioner has been detained under § 1226(c) for approximately eight months without a hearing on whether or not he is a danger to the community or likely to flee. Petitioner's detention is now longer than the reasonable amount of time contemplated in Demore, which mentioned a month and a half to five months as a reasonable period of time.[3] Thus, "continued detention

---

[3] The Supreme Court described the "brief period" that it held valid: "in the majority of cases," detention pursuant to § 1226(c) in 2003 "lasts for less than . . . 90 days." Demore, 538 U.S. 510 at 529. In the overwhelming majority of

7

without inquiry into its necessity becomes more and more suspect" as detention continues to extend past the time frame described in Demore. See gen., Diop, 656 F.3d at 234. Furthermore, detentions of similar length have been found elsewhere to violate the Due Process Clause. See, e.g., Sajous v. Decker, 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018) (eight months); Gordon v. Shanahan, 2015 WL 1176706, *3 (S.D.N.Y. March 13, 2015) (eight months); Harpa v. Mumford, 211 F. Supp. 3d 706, 717 n.6 (D. Md. 2016) (10 months). Therefore, the current and ongoing length of Petitioner's detention weighs in favor of granting relief.

Second, courts consider how long the detention is likely to continue in the absence of judicial relief. In estimating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals. Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003) ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability."). In Muse, for example, the IJ denied the petitioner's claim for relief and the petitioner promptly appealed the decision to the BIA. 2018 WL 4466052, at *6. The Court found that the petitioner could potentially be detained for up to another 18 months because at the time he filed his petition, he had just appealed the IJ's decision. Thus, the Court reasoned that if he received an adverse decision from the BIA then he would appeal the BIA's decision to the Eighth Circuit. Id. Therefore, the Court concluded that the potentially lengthy appeals process weighed in the petitioner's favor. Id.

In the present case, the length of the ongoing detention also supports granting Petitioner relief. Like in Muse, Petitioner here could easily be detained for a year or more by the time all appeals have been exhausted. The IJ denied Petitioner's claims for relief on May 17, 2018, over

---

cases—85%—"removal proceedings are completed in an average time of 47 days and a median of 30 days." Id. "In the remaining 15% of cases," in which an appeal in Demore was taken, "appeal takes an average of four months." Id. The Court thus concluded that "[i]n sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases." Id. at 530.

six months ago. (Ligon Decl., Ex. 6 [Docket No. 6-6]). As of the date of the filing of Respondents' Response, Petitioner's appeal of the IJ's initial determination to the BIA has still not been decided. (Ligon Decl., Ex. 7 [Docket No. 6-7]). If Petitioner loses his appeal, it is likely he will seek review in the Eighth Circuit, and it may well be another year before he gets a decision. Muse, 2018 WL 4466052, at *5 (D. Minn. Sept. 18, 2018). Thus, because it is likely that Petitioner will be detained for more than a year by the time all appeals have been exhausted, this factor, too, weighs in his favor.

Third, courts consider the conditions of the alien's detention. Aliens held under § 1226(c) are subject to civil detention rather than criminal incarceration. Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469, 477 (3d Cir. 2015). The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument. Id. And "[a]s the length of the detention grows, the weight given to this aspect of his detention increases." Id. Furthermore, courts in this District have found that this factor weighs in a petitioner's favor where the petitioner is being held in a county jail. Muse, 2018 WL 4466052, at *5.

This third factor also weighs in Petitioner's favor. Currently, Petitioner, who is only civilly committed, is being detained in the Freeborn County Jail in Albert Lea, Minnesota. Like in Muse, supra, Petitioner here is similarly being detained in a county jail alongside inmates serving criminal sentences. Thus, because Petitioner's detention strongly resembles penal confinement, this factor also weighs in Petitioner's favor.

Fourth, courts consider the nature and extent of any delays in the removal proceedings caused by the alien. "An alien should not be punished for raising legitimate defenses to removal." Muse, 2018 WL 4466052 at *5; See, Ly, 351 F.3d at 272 ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues

9

of relief that the law makes available to him."). Indeed, "the mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition." Hernandez v. Decker, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018). Courts should, however, be "sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." Ly, 351 F.3d at 272. If courts did not take into account the alien's role in delaying removal proceedings, they "would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release." Id.

Here, in opposition to the present petition, the Government has failed to discuss any of Petitioner's arguments in the pending appeal from the IJ's order of removal, which overlooks a key part of a fact-dependent inquiry. See, e.g., Hernandez, 2018 WL 3579108, at *9 (noting that the "government's failure to parse Jaimes's arguments overlooks a key part of a fact-dependent inquiry."); Chavez-Alvarez, 783 F.3d at 477 (noting that while the respondent "undoubtedly is responsible for choosing to challenge his removal by raising complicated issues that have taken a lot of time to argue and decide . . . this does not undermine his ability to claim that his detention is unreasonable."); Gordon, 2015 WL 1176706, at *5 ("Moreover, it would be unreasonable to penalize Mr. Gordon for exercising his right to challenge removal by requiring him to be detained while he exercises that right . . . ."). Furthermore, no evidence in the present record suggests that Petitioner has engaged in any dilatory tactics. He has merely raised non-frivolous arguments in support of his position on appeal. He has also complied with all deadlines, and he has not sought extensions. Thus, this fourth factor weighs in Petitioner's favor.

Fifth, courts consider the nature and extent of any delays in the removal proceedings caused by the Government. "Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." Sajous, 2018 WL 2357266, at *11.

Like Petitioner, there is nothing in the present record to suggest that the Government has engaged in any dilatory tactics. Similar to Petitioner, the Government has merely made non-frivolous arguments in support of its position and the Petitioner has not argued otherwise. (Indeed, the Government prevailed with the IJ). And like Petitioner, the Government has complied with all deadlines and not sought delays. This fifth factor thus weighs in the Government's favor.

Lastly, courts consider the likelihood that the proceedings will culminate in a final removal order. The more likely that the alien will ultimately be removed, the longer the detention that will be deemed reasonable. See, Muse, 2018 WL 4466052, at *6.

This sixth factor does not weigh in either party's favor in the present case. The fact that the IJ has ordered that Petitioner be removed does not help Petitioner. However, Petitioner has appealed that decision to the BIA. (Ligon Decl., Ex. 7 [Docket No. 6-7]). Neither party has characterized the arguments made on appeal and thus, this Court does not have a sufficient basis to determine whether Petitioner is ultimately likely to be removed.

In conclusion, four of the aforementioned factors weigh in Petitioner's favor, one weighs against him, and one is neutral. This Court therefore finds that continuing to detain Petitioner beyond the eight-plus months he has already been detained, without an immediate end thereof evident, violates his due process rights under the Fifth Amendment.

Accordingly, this Court recommends that Petitioner's Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED**.

### III. CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Petitioner's Amended Application to Proceed in District Court without Prepaying Fees or Costs, [Docket No. 18], is **GRANTED**; and

2. Petitioner's Motion to Reconsider and Terminate in Light of <u>Pereira v. Sessions</u>, [Docket No. 15], is **DENIED as moot**.

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Mario C. Penaloza's Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED**.

Dated: December 12, 2018                          <u>s/Leo I. Brisbois</u>
                                                                       Leo I. Brisbois
                                                                    U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. <u>See</u>, Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).